KNOXVILLE NEWS CO. *v.* PAUL H. SPITZER.*

(*Knoxville.* September Term, 1925.)

1. **MASTER AND SERVANT.** Minor unlawfully employed not estopped to maintain action for injuries by misrepresentation of age.

One employing a minor under sixteen years of age, contrary to Public Acts 1911, chapter 57, to assist in operating a cylinder printing press run by other than foot power, and who does not have employment certificate on file, as required by Public Acts 1917, chapter 77, section 3, cannot plead that minor is estopped to maintain an action for injuries while engaged in such employment by his misrepresentation of his age when seeking employment. (*Post, pp.* 634, 635.)

Acts cited and construed: Acts 1911, ch. 57; Acts 1917, ch. 77; Acts 1907, sec. 195.

Cases cited and approved: Int. Agri. Corp. v. Cobble, 146 Tenn., 120; La Rose v. Nichols, 91 N. J. Law, 355; Queen v. Dayton Coal & Iron Co., 95 Tenn., 458; People v. Roby, 52 Mich., 577; Secklich v. Harris Emery Co., 184 Iowa, 1025; American, etc., Car. Co. v. Armentraut, 214 Ill., 512; Beauchamp v. Sturges Co., 250 Ill., 306; Syneszewski v. Schmidt, 153 Mich., 438; Barham v. Turbeville, 31 Tenn., 437; Adams v. Fite, 62 Tenn., 69; Galbraith v. Lunsford, 87 Tenn., 103; Norfolk & Western Railroad Co. v. Bondurant, 107 Va., 515.

---

*Applicability of Compensation Statutes to minors, see notes in L. R. A., 1917D, 90; L. R. A., 1918F, 209; 14 A. L. R., 818; 33 A. L. R., 337.

Master' liability for injury to minor servant who secures employment by misrepresenting his age, see notes in 20 L. R. A. (N. S.), 500; 25 L. R. A. (N. S.), 708; 42 L. R. A. (N. S.), 624; L. R. A., 1915F, 1082.

Excessiveness of verdicts in actions for personal injuries other than death, see note in L. R. A., 1915F, 30.

Cases cited and distinguished: Nick Glucina v. Goss Brick Co., 63 Wash., 401; Feir v. Weil et al., 92 N. J. Law, 610; De Soto Coal Mining & Dev. Co. v. Hill, 179 Ala., 192; Lenahan v. Pittston Coal Min. Co., 67 A., 642.

Codes cited and construed: Sec. 1035 (Ala., 1907); Sec. 1526 (1924).

2. **APPEAL AND ERROR.** Any error in disposing of plea of settlement harmless, where court of appeals and circuit court agreed that there was no settlement.

Where court of appeals and circuit court agreed that there was no settlement, under Workmen's Compensation Act, of minor's cause of action for injuries while employed in violation of Public Acts 1911, chapter 57, any error in refusing to permit plea of such settlement was harmless, under Act of 1911. (*Post, p.* 635.)

3. **MASTER AND SERVANT.** Workmen's Compensation Act no bar to action for injuries to minor unlawfully employed.

Where minor is employed in violation of Public Acts 1911, chapter 57, and employer fails to keep on file certificate of employment required by Public Acts 1917, chapter 77, section 3, Workmen's Compensation Act does not bar an action for damages for injuries suffered by minor in such unlawful employment. (*Post, pp.* 635-643.)

Cases cited and approved: Manning v. American Clothing Co., 147 Tenn., 274; Stetz v. Mayer, etc., Co., 163 Wis., 151; Norman v. Va. Pocahontas Coal Co., 68 W. Va., 405; Grand Rapid Trust Co. v. Petersen Beverage Co., 219 Mich., 208; Terry Dairy Co. v. Nalley, 146 Ark., 448; Koester v. Rochester Candy Works, 194 N. Y., 92.

Cases cited and distinguished: W. U. Tel. Co. v. Ausbrooks, 148 Tenn., 615; Iron & Wire Co. v. Green, 108 Tenn., 164; Finley v. Furniture Co., 119 Tenn., 705; Fulton Co. v. Mass. Bonding & Ins. Co., 138 Tenn., 278; Dusha, Admx., etc., v. Virginia, etc., Co., 145 Minn., 171; Evans v. Dare Lumber Co., 174 N. C., 31; L., H. & St. L. R. Co. v. Lyons, 155 Ky., 396; Sims v. Everhardt, 102 U. S., 300.

Laws cited and construed: Laws 1915, p. 1505.

4. **MASTER AND SERVANT.** Defense of fellow servant, assumption of risk, and estoppel unavailable to one employing minor unlawfully.

Defense of fellow servant, assumption of risk, or estoppel *in pais held* unavoidable to one employing minor under sixteen years of age,

Knoxville News Co. v. Spitzer.

contrary to Public Acts 1911, chapter 57, to assist in operating a cylinder printing press run by other than foot power, and who did not have certificate of employment on file, as required by Public Acts 1917, chapter 77, section 3. (*Post, pp.* 643-646.)

5. **MASTER AND SERVANT.** Misrepresentation of age not considered in mitigation of damages for injuries to minor unlawfully employed.

That minor misrepresented his age when seeking employment cannot be considered in mitigation of damages for injuries sustained by him, where he was employed contrary to Public Acts 1911, chapter 57, to assist in operating a cylinder printing press run by other than foot power, and employer did not have certificate of employment on file, as required by Public Acts 1917, chapter 77, section 3. (*Post, p.* 646.)

6. **DAMAGES.** Damages of $2,000 for injury to plaintiff's foot held excessive, and reduced by $500.

Damages of $2,000 for permanent injury to plaintiff's foot, incapacitating him for about thirteen weeks, *held* excessive, and reduced by $500. (*Post, pp.* 646, 647.)

COOK, J., dissenting.

---

*Headnotes 1. Master and Servant, 39 C. J., Section 432; 2. Appeal and Error, 4 C. J., Section 3190; 3. Workmen's Compensation Acts, C. J., Section 157; 4. Master and Servant, 39 C. J., Sections 655, 1023; 5 Master and Servant, 39 C. J., Section 1444 (Anno); 6. Appeal and Error, 4 C. J., Section 2858.

---

### FROM KNOX.

---

Appeal from the Circuit Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. W. B. NEIL, Judge.

BOWEN & BOWEN, for Knoxville News Co.

GREEN, WEBB & COWAN, for Paul H. Spitzer.

MR. J. PIKE POWERS, Special Justice, delivered the opinion of the Court.

Paul H. Spitzer, a minor, by next friend, Nannie C. Spitzer, hereinafter called petitioner, recovered a judgment for $1,500 damages against the Knoxville News Company, hereinafter called defendant, for personal injuries to Paul H. Spitzer while engaged in its work. The verdict of the jury was for $2,000, but a remittitur was suggested and accepted under protest by the petitioner. The defendant appealed to the court of appeals, and this judgment was by that court reversed and the suit dismissed. A petition for *certiorari* to review the action of that court was filed here by petitioner, and he has assigned errors. Its prayer was granted, the case was set down for argument, and the case has been argued.

Petitioner's suit is rested upon the child labor laws of this State.

The statutes relied on as making the employment illegal are as follows:

Pub. Acts of 1911, chapter 57:

"Section 1. . . . That it shall be unlawful for any proprietor, foreman, owner, or other person to employ, permit, or suffer to work any child less than fourteen years of age in, about, or in connection with any mill, factory, workshop, laundry, telegraph or telephone office," etc.

"Sec. 2. [Deals with minors under fourteen years of age.]

"Sec. 3. . . . That no child under age of sixteen years shall be employed, permitted, or suffered to work at any of the following occupations or in any of the following positions: . . . operating or assisting in operating . . . job or cylinder printing presses oper-ated by power other than foot power. . . .       " ,

"Sec. 5. . . . That it shall be unlawful for any proprietor, foreman, owner, or other person to employ, permit, or suffer to work any child between the ages of fourteen and sixteen years in, about, or in connection with any place or establishment named in section 1, un-less said proprietor, foreman, owner, or other person keep on file and accessible to the shop and factory in-spector a sworn statement made by the parent or guard-ian or any person acting as guardian of such child, set-ting forth place and date of birth of such child. . . .

"Sec. 6. . . . That whoever employs any child and whoever having under his control as parent, guardian or otherwise any child, permits or suffers such child to be employed or to work in violation of any of the provisions of this act shall be deemed guilty of a misdemeanor. . . ."

Pub. Acts of 1917, chapter 77:

Section 3: Insert in the 1911 act, after factor inspec-tor: "An employment certificate which shall be issued only by the county superintendent of schools, or by a person authorized by him in writing in the city, town, or village where such child resides, or in the city, town or village, in which the child is to be employed, and only upon the application in person, of the child desiring em-

ployment, accompanied by its parent, guardian or custodian. . . .''

The facts in this case are practically uncontroverted. As found by the court of appeals, these facts are as follows: "At the time of this employment, and at the time of the injury, plaintiff was a minor under sixteen years of age. He was born June 7, 1906. He had been working ever since he was fourteen years old. He started working for the defendant in the latter part of 1921. Defendant did not require any certificate of plaintiff, but asked him as to his age. Plaintiff in his testimony states:

" 'He just asked me how old I was.

" 'Q. How old did you tell him you were?

" 'A. I told him I was sixteen.

" 'Q. Why did you tell him you were sixteen?

" 'A. I was afraid I would not get the job.' "

The plaintiff weighs about one hundred and forty-five pounds, was about six feet tall, wore a number eight or nine shoe, and had been shaving, and upon this representation he was employed, though he would not have been employed had defendant not believed he was sixteen, as it was a rule of the News not to employ any one under sixteen. Defendant did not know the age of the young man, and there was nothing in his appearance to indicate that he was not telling the truth. The falsehood decided the defendant, and he was employed, under the idea that he was sixteen years of age. He was put to work as a packer boy, and was told to do as Mr. Busby told him to do. His duties as a packer boy were to take the papers out of the packer and stack them on the table, and to take the plates off of the elevator and hand them

to Busby on the press; to take the plates from the press, Busby, the foreman, handing them down to him from a platform where he was performing his duty of taking the plates and putting them on the press, and taking them off the press and handing them down to plaintiff. Busby was foreman of the pressroom, and was placed in charge of the plaintiff, who was directed to do what Busby told him to do. The press where the defendant was printing its papers was a cylinder press, run by electricity, and the plaintiff was thus permitted to work in the room and around the place where it was operated; the line of demarcation between his and Busby's work being the handing to and receiving from Busby the plates as they were required to be taken to and from such press. Busby's job was to keep the press in order and run the same.

"On May 4, 1922, the plaintiff was around the packer taking off some papers. They were late, and things were going wrong. They were making a plate over, and were readly to put it on. Busby was taking the plate off of the top deck making a change, and called the plaintiff around there, and told him to come quick, and plaintiff ran to get it, and as he was reaching up Busby let it drop—gave it a kind of pitch. Plaintiff could not catch it or get entirely out of the way of the plate. It was a combination of lead and babbit mixed together, and weighed in the neighborhood of fifty pounds. In falling it hit the plaintiff on the left foot in some way, and effected the injury. Dr. Lane was called and plaintiff removed to the hospital. Some X-ray pictures were taken of the foot, and shortly afterwards plaintiff was re-moved to his mother's home, where he was laid up for something like thirteen weeks, and medical attention

given him. Dr. Oppenheimer described the injury as that his foot was crushed, affected with what was called a compound comminuted fracture of the fifth metatarsal bone. Interpreted by him, it means a compound fracture in one that is open. Comminuted means that the bone is crushed, and the fifth metatarsal bone of the left foot means the outside bone of the foot. This, as explained by the surgeon, is a very important part—the fifth metatarsal bones support the arch of the foot. This condition of the injury, with the best attention, entailed a deformity which would cause more or less disability in walking or standing. There was but one way of remedying this condition, which was to take out a portion of it and reset it, the outcome of which would be doubtful. Also there is a protrusion—a piece of bone thrown out where it was fractured, on the under side or bottom of the foot, connected with the bone, but extending down a quarter of an inch; in other words, a knot on the bottom of the bone, with a protrusion of something like a quarter of an inch. This will cause more or less pain and discomfort. It might be cut off with an operation and give considerable relief, but, if the entire bone were removed, it would weaken the support of the foot. This injury, therefore, is permanent, and more or less discomfort will continue to result from it. In standing he has to favor it at times by resting most of his weight on the other leg, but has continued to work at occupations requiring such standing for full days.

"Defendant had accident insurance, and during the time of the disability paid to plaintiff's mother his weekly wage, and she and his doctor estimated his disability at about ten per cent. The insurance company paid in a

check of $62.50 as what was due him as his weekly wage, and later plaintiff signed over this check to defendant, or its agent, as a return for the amount the defendant through its agent had advanced to his mother. The insistence was, as attempted to be covered by the plea, that this was a settlement, accord, and satisfaction. But the proof wholly fails to show this to be a settlement. At best it might only affect the mother's right of action for loss of his services, but it was not an attempt to settle plaintiff's right of action for his injuries, nor was it so understood or agreed upon.''

In the view that we take of this case, it is unnecessary to recite in detail the various pleas and demurrers, the action of trial court thereon, and on the motions to strike the various pleas, but these may be referred to incidentally.

The petitioner was, as above shown, engaged in assisting in the operation of a cylinder printing press, operated by power other than foot power.

Generally stated, there were four counts in the declaration. In the first three counts it was alleged that the petitioner was illegally employed in violation of said laws by the defendant, and that the defendant did not have on file the employment certificate required when petitioner was between the ages of fourteen and sixteen.

In the first count it was specifically alleged that this illegal employment was negligence. The second count alleged that the foreman of the pressroom was negligent, and that the defendant could not plead the petitioner was injured by a fellow servant, because of this illegal employment. The negligence relied upon in the third count was that of the foreman, who, it is alleged,

was a vice principal, and was guilty of specific negligent conduct as such. In the fourth count it was alleged that the defendant was illegally employing the petitioner, a minor under sixteen years of age, to assist in operating a cylinder printing press, run by power other than foot power. It was alleged that this employment was illegal, by statute, and this constituted the negligence which caused the injury to the petitioner. The circuit judge struck out on motion or by demurrer all of the special pleas of the defendant, except one, on which the petitioner joined issue, and also to which the petitioner filed a special replication, to which a demurrer was filed and overruled, and upon which issue was joined. The plea of "not guilty," and the second plea, setting up the defense that this case was governed by the Workmen's Compensation Act (Pub. Laws 1919, chapter 123), upon which the plaintiff joined issue, and further by a special replication disaffirmed any settlement made under the Workmen's Compensation Act, were the pleas upon which the case should perhaps have been submitted to the jury, but the trial court submitted only the issues raised by the plea of not guilty.

Errors assigned in this court by the petitioner are as follows:

"(1) The court of appeals was in error in dismissing the case.

"(2) It was in error in holding that the demurrer of the plaintiff to the fourth plea of the defendant was improperly sustained by the trial court. This fourth plea was to the effect that the plaintiff was estopped and prevented from recovering, by his misrepresentation as to age.

"(3)    It was in error in sustaining the defendant's fifth and sixth assignments of error, which were to the effect that the trial court erred in not granting defendant's motions for a directed verdict made at close of plaintiff's case and at the close of the entire testimony.

"(4)    It was in error in sustaining the seventh assignment of error of the defendant in holding that the trial court should have instructed the jury there could be no recovery on the common-law counts.

"(5)    It was in error in sustaining the eleventh assignment of error, which was to the effect that the trial court erred in instructing the jury that, if they found that Busby threw the plates carelessly to the floor, and this was the proximate cause of plaintiff's injury, the jury should return verdict for plaintiff on second count.

"(6)    It was in error in sustaining the eighth assignment of error and holding that the trial court was wrong in confining the trial of the case to the issue of not guilty.

"(7)    It was in error in sustaining the thirteenth assignment of error, which was to the effect that the court erred in directing a verdict for plaintiff on the fourth count.

"(8)    It was in error in holding that the plaintiff's misrepresentation of age would be a defense to the action, and in sustaining the fifteenth assignment of error, for the misrepresentation as to his age is neither a defense *in toto* nor should be taken in mitigation of damages.

"(9)    It was in error in sustaining the sixteenth assignment of error on the ground that there was no proof to support the verdict, and, on the same ground, overruling the assignment of plaintiff as to the remittitur."

1.   The first question which we consider under these assignments is:

Was the petitioner estopped by reason of his misrepresentation of his age, and shall the defendant be permitted to set this up as a complete defense?

Petitioner's action of negligence is based on the violation by the employer of these child labor laws.

The first count alleged that the defendant did not have the certificate on file as required, and the fourth count charged the defendant with allowing the petitioner, who was under sixteen years of age, to assist in operating a cylinder printing press, run by power other than foot power.   It is charged that the defendant violated the law in both of these respects, that is, that it was a violation not to have the certificate aforesaid, and it was another violation to permit him to assist in operating said press.   The proof shows that these allegations are true, and petitioner was so unlawfully employed and engaged.

These statutes have been before the court in other cases.   This court held that, where a father misrepresented the age of his son to an employer, and then, as sole beneficiary, upon the fatal injury of the boy sued for damages, the father could not recover, because his act was a contributing cause of the death.   In that case the defendant was induced to employ the deceased boy by the plaintiff's misrepresentation of his son's age, and the plaintiff was the sole beneficiary of any recovery.

In the language of Mr. Justice HALL, who delivered the opinion of the court, it was held that the plaintiff in that case should not be entitled to recover "because his act was necessarily a direct, proximate, and contributing cause of his son's injury and death."   *Int. Agri. Corp.*

152 Tenn.—40.

v. *Cobble,* 146 Tenn., 120, 127, 128, 240 S. W., 295, 298.

Under these statutes, the father and the defendant were held both guilty of a misdemeanor in that case.

It is insisted by counsel for petitioner that the minor's misrepresentation of his age under these laws should be no defense to his suit.

In support of this insistence, numerous cases have been presented and argued. These and others we now consider:

In the case of *Nick Glucina* v. *Goss Brick Co.* (1911), 63 Wash., 401, 115 P., 843, 42 L. R. A. (N. S.), 624, a boy under fourteen years of age was employed to operate a machine in a brick factory, and received serious injury to his right hand. He brought suit for damages therefor, and the defense was that the boy assumed the risk and was guilty of contributory negligence, and, further, that the boy had been employed at the request of his father, who represented him to be over sixteen years of age, and able to do the work, and that the boy appeared to be over sixteen, and appeared to be able to do the work. The court was requested to charge the jury that, if the defendant used care in determining the question of the boy's age, and if the boy appeared to be of that age, such as to lead the defendant to believe that he was sixteen years of age, and if the father represented that the boy was sixteen years of age, then the defendant would not be liable. This request was denied.

On the other hand, the court charged that, if this boy was under fourteen years of age, and was employed to work in a factory, and was injured, the defendant assumed all the risk. Plaintiff recovered a verdict of $8,500. In passing upon the insistence that the lower

court should have heard the plea of good faith in the employment, the court said:

"The statute makes it unlawful for any person to employ a male child under fourteen years of age in any factory, without the written permission thereto of a judge of the superior court of the county wherein such child may live. . ⁙ . Acts 1907, p. 948, section 195, makes it unlawful for a person having the custody or control of a child to permit such employment. It is obvious that the legislature, under its police power, sought to protect the lives and limbs of children in shops and factories by prohibiting such employment. . . . But we are of the opinion that the employer must know at his peril that the person employed is over the prohibited age. . . . We have no doubt that, if the father were suing for loss of services of the child, his representation . . . would estop him. . . . Even if the appearance of the child indicated that he was over the age of fourteen years, that fact would not relieve the defendant, because the statute makes no such exception." *Nick Glucina, by his guardian, etc.,* v. *Goss Brick Co.,* 63 Wash., 401, 115 P., 843, 42 L. R. A. (N. S.), 624.

So in 1918, in the case of *Feir* v. *Weil et al.,* 92 N. J. Law, 610, 106 A., 402, it was held that the doctrine of estoppel *in pais,* as applied to infants, is not applicable to the employment of a child under fourteen years of age, in violation of the Factory Act of 1904 (P. L. p. 152) of the State of New Jersey. We quote in part the opinion of the court:

"The uncle brought the plaintiff to the superintendent and upon inquiry as to the age of the plaintiff, they both stated that the plaintiff was fifteen years old, at the

same time presenting the employment certificate from the superintendent of schools, showing that the plaintiff was fourteen years, nine months and sixteen days old, which, at the time of his employment by defendants in February, 1916, would make him more than fifteen years old. The defendant relied upon the representations of the boy and his father, and set him to work as a bobbin boy. He was injured in his left elbow and a substantial judgment was recovered for, and he was not fourteen years old at the time of the accident.''

The court said: ''The child may show that his injuries resulted from the neglect of another, merely by showing a violation of the statute, and is not chargeable with contributory negligence. . . . It is not a question of whether the employer believed the child was over the prohibited age, but whether or not he was. . . . So the master must ascertain at his peril the true age of the child. . . .

''The only other point that calls for discussion is whether the doctrine of estoppel *in pais* applied to an infant by this court in the case of *La Rose* v. *Nichols*, 91 N. J. Law, 355 [103 A., 390] is applicable. The doctrine of estoppel is not applicable.''

After holding that the doctrine of infancy as a defense is a creature of the common law which the legislature, in its discretion, may depart from, the court in that case concludes:

''In this class of cases . . . the legislature under its police power has said there shall be no valid contract. The legislature has laid its hand alike upon the employer, the infant and the parent. This inhibition is based upon an economic principle beneficial to the State for the pro-

tection of child life and is aimed primarily at the employer.''

This holding is in harmony with that of other jurisdictions.

One of the cases cited by the New Jersey court in that opinion is that of *De Soto Coal Mining & Dev. Co.* v. *Hill,* 179 Ala., 192, 60 So., 583. The statute in that case prohibits the employment of a boy under fourteen years of age in a coal mine (section 1035 of the Alabama Code of 1907), but the same question was involved in that case, as seen from the following quotation:

''It is not a question of whether or not the employer thought the child was over the prohibited age, but whether or not he was. . . . The weight of authority also is that false representations by the minor or any one else, as to his age, would not estop him from a recovery for injuries sustained. Neither can the defense of assumption of risk or contributory negligence be invoked by the master as a defense to injuries sustained as a result of the wrongful employment''—citing numerous cases, including our case of *Queen* v. *Dayton Coal & Iron Co.,* 95 Tenn., at page 458, 32 S. W., 460, 30 L. R. A. 82, 49 Am. St. Rep., 935, which is referred to below.

The Alabama court further said: ''We do not mean to hold that a representation by the parent that the boy was over age would not estop said parent in an action for violating the statute, but do hold that the boy is not estopped from a recovery, either by his own misrepresentations or those of his parents, as to his age. . . .'' We follow cases holding the defendant liable whether the injury was done negligently or not. 179 Ala., 194, 60 So., 583.

The supreme court of Pennsylvania, in a case involving the same question (*Lenahan* v. *Pittston Coal Min. Co.,* 67 A., 642, 218 Pa., 311, 12 L. R. A. [N. S.], 461, 120 Am. St. Rep., 885), said: "After full consideration we are unanimously of opinion that the legislature, under its police power, could fix an age limit below which boys should not be employed, and when the age limit was so fixed an employer who violates the act by engaging a boy under the statutory age does so at his own risk, and if the boy is injured while engaged in the performance of the prohibited duties for which he was employed, his employer will be liable in damages for injuries thus sustained. . . . The intention was to declare that a child so employed did not have the mature judgment, experience and discretion necessary to engage in that dangerous kind of work. A boy employed in violation of the statute is not chargeable with contributory negligence or with having assumed the risks of employment in such occupation."

The court quotes the language of Judge Cooley of the supreme court of Michigan with reference to another statute in which he said: "The purpose [of the statute] being to require a degree of diligence for the protection of the public which shall render violation impossible." *People* v. *Roby,* 52 Mich., 577, 18 N. W., 365, 50 Am. Rep. 270.

The supreme court of Iowa, in a case where a girl was employed to work, who was under the provision of the Child Labor Law (Code 1924, section 1526 et seq.), and who stated that she was over fifteen years of age when she obtained her employment, who fell in an elevator shaft and was killed, wherein the defendant relied upon

her representation, as set forth in her written contract, that she was over fifteen years of age, and wherein the defense was that she had falsely misstated her age at the time of the employment, said:

"The prohibition declared by the statute is absolute and unconditional; and one who employs a young person to perform a service thus regulated or forbidden cannot be heard to say in excuse that he was misinformed . . . or . . . deceived by apparent maturity of the person employed. To hold otherwise would be to open the door to wholesale violation of the statute" and would further insert the word "knowingly" into the statute. *Secklich* v. *Harris Emery Co.,* 184 Iowa, 1025, 169 N. W., 325.

In an Illinois case, where the lower court declined to charge the jury that, if a boy injured had falsely represented at the time of his employment that he was sixteen years of age, and that he obtained his employment by reason of such false statement, there could be no recovery, the court said:

"Appellant was, by the statute, permitted to employ in its shops only persons above the age of fourteen years. It must ascertain, at its peril, that the persons it employs are members of the class of persons it may lawfully employ." *American, etc., Car Co.* v. *Armentraut* (1905), 214 Ill., 512, 73 N. E., 766.

The same court, in another case involving the same question, said: "It is next contended that the appellee is estopped from maintaining this action because, it is said, he represented to the appellant, at the time he was employed, that he was over seventeen years of age. If the appellee did misrepresent his age . . . he was

not estopped from maintaining this action by reason of such representation. The law is, that if the appellant employed the appellee in violation of the statute it is liable if he was injured while in such [illegal] employment. . . . A child under the prohibited age cannot, by a false statement as to his age, make his employment in violation of the statute lawful and authorize the employer to do that which the statute in express terms says he shall not do. To so hold would be to hold a child by his false statement could, in effect, repeal the statute." "The statute was enacted for the . . . health and safety of children, and a liability for damages resulting from its violation is created whether it is expressly so declared in the statute or not." *Beauchamp* v. *Sturges Co.*, 250 Ill., at page 306, 95 N. E., 204.

So the supreme court of Michigan, in a case where the certificate which was required by the act had not been obtained, and where a boy misrepresented his age as being sixteen, and looked to be sixteen, the court, speaking through OSTRANDER, J., said:

"It is unnecessary to determine whether it is mandatory or whether a false statement made by a parent would prevent a recovery by a child unlawfully employed. It is a precaution which in furtherance of the legislative purpose the employer is in terms required to observe. It cannot be said that its observance would not tend to prevent unlawful employment of children, and therefore, prevent violations of the law. . . .

"All that defendants did they would be, in good faith, required to do in any case. But the statute does not accept the mere statement of a child as to his age and the court cannot aid one who did accept it."

In that case it was claimed that the child was a fellow servant, and also that the child was estopped; the child having been employed to take skins from a table and lay them upon a horse, his fingers having been caught in a machine and crushed. The court held in that case that the representation of the infant, while relieving the defendant "from moral responsibility, did not relieve it from its legal liability." *Syneszewski* v. *Schmidt* (1908), 153 Mich., 438, at page 444, 116 N. W., 1107.

Numerous other cases might be cited and quoted from, to the same effect, but it is not deemed necessary. See 39 C. J., p. 303, section 432, and numerous cases cited.

The court of appeals took the contrary view in this case, relying upon the case of *International Agricultural Corporation* v. *Cobble,* supra, which case only held that the father was estopped by the false representation of his son's age, he being the sole beneficiary, and suing to recover damages for his son's death.

While adhering to the holding of the court in that case, we are of opinion that it is not applicable to the facts of the present case where the child himself made the misrepresentation and sues. In that case, the father told the superintendent of the powder plant, where he presented his son, that he was over sixteen years of age, and, the son having been negligently killed, the father was the sole beneficiary. The doctrine of estoppel *in pais* was applicable to him. He was *sui juris,* and was not protected by the Child Labor Law. That court further relied upon the case of *Barham* v. *Turbeville,* 1 Swan, 437, 57 Am. Dec., 782; *Adams* v. *Fite,* 3 Baxt., 69; and *Galbraith* v. *Lunsford,* 87 Tenn., 103, 9 S. W., 365, 1 L. R. A., 522.

These cases, of course, did not arise after the passage of these statutes, and are not properly applicable to the case at bar.

The defendant also relies upon the case of *Norfolk & Western Railroad Co. v. Bondurant,* 107 Va., 515, 59 S. E., 1091, 15 L. R. A. (N. S.), 443, 122 Am. St. Rep., 867. The facts of that case were that Bondurant signed a written application to the railroad in which he represented himself to be twenty-one years of age; the railroad company having a rule that it would employ no person under the age of twenty-one. It was held in that case that the plaintiff was guilty of fraud, and that he could not recover for any injury sustained in the employment, but was repelled thereby. However, that case did not arise under the Child Labor Law, but only invoked a rule of the railroad, and the plaintiff in that case was not within the protection of the statute passed for the benefit of infants of tender years, and that case is not in point. Defendant had a similar rule in the instant case, but its rule could not repeal the statute.

Without further discussion of this question, we are constrained to hold that, under the facts of this case, by the great weight of authority and in sound reason, the defendant cannot plead that the petitioner is estopped by his misrepresentation of his age as a defense in this case.

It follows that the first, second, third, fourth, fifth, seventh, and eighth assignments of error must be sustained.

2. The next question to be determined is whether or not the trial court was in error in not permitting the second plea of the defendant, to the effect that there had

been a settlement made under the Workmen's Compensation Act of the damages in this case, to be relied upon by the defendant, and in confining the trial to the issue raised by the defendant's plea of "not guilty."

This is covered by the sixth assignment of error in this court. The court of appeals found, as shown above, that there was no such settlement as was attempted to be set up by the plea of accord and satisfaction. So that court and the lower court agree upon the facts in this respect, and, if there were error here, it is harmless error, and could not be taken advantage of under the act of 1911.

However, it has been settled in this State that, where a minor is employed in violation of the statutes involved in this suit, the Workmen's Compensation Act is not applicable to bar an action for damages as a result of injuries suffered by the minor in the unlawful employment.

In the case of *Western Union Tel. Co.* v. *Ausbrooks*, 148 Tenn., 615, 257 S. W., 858, 33 A. L. R., 330, and cases cited, Mr. Chief Justice GREEN, in delivering the opinion, said:

"We are of opinion, therefore, that the employment of the deceased boy to work after seven o'clock and his employment without the certificate provided by the statute—his employment at the particular time he was killed —was just as unlawful as would have been his employment at any time had he been less than fourteen years of age.

"We doubt that a minor, although unlawfully employed, should be deprived of the benefits of our compensation statute, if he claims them. Our child labor laws penalize the employer, not the child, and the employer should not be permitted to use them as a shield. A con-

trary holding in some cases may be ascribed to language in the statutes which excludes entirely from their operation such minors,''—and again: ''So the employer who violates the Labor Laws enacted to control him cannot urge his wrongdoing as a defense against an employee's claim under the compensation statute.''

This court held in that case that the minor so unlawfully employed was not embraced within the Workmen's Compensation Law.

So also in the case of *Manning* v. *American Clothing Co.*, 147 Tenn., at page 274, 247 S. W., 103, Mr. Justice HALL, delivering the opinion, held that the Workmen's Compensation Act had no application to the case of injuries to an infant under fourteen, employed in violation of these sections. Id., page 282, 283 (247 S. W., 103).

The court in that case held that the employment of minors provided for in the Workmen's Compensation Act had no reference to the unlawful employment of minors embraced within the statutes involved in this case. Id., page 283 (247 S. W., 103).

So it results that the sixth assignment of error should be sustained.

This court in the Queen case, as far back as 1895, held that the employment of an infant in a mine, where the statute provided that its violation should be a misdemeanor, constituted negligence *per se*. This holding was followed by the court in the Manning case, supra. That case is not only authority for the holding that the employer is guilty of negligence *per se* in unlawfully employing an infant under the provisions of the statute involved in this suit, but it also held that, even though a guardian had made a settlement under the Workmen's

Compensation Act for the minor, nevertheless, the minor is not bound by the settlement of her claim for compensation, in view of her minority.

3. But another insistence of the defendant is that the petitioner should not be permitted to recover, because he was injured by a fellow servant, and the trial court should have permitted this issue to go to the jury.

We approve the holding of the supreme court of Michigan in the case above cited, as follows: "It has been held that an employer cannot be permitted to say that a person, who, under the terms of positive law, may not be his servant, is a fellow servant of his servant." *Syneszewski* v. *Schmidt,* supra.

Neither can we take the view of the court of appeals that a minor unlawfully employed under these statutes becomes, under the facts of this case, a trespasser or licensee, and that there is no duty owed to him, save to refrain from willfully injuring him. So to hold, under the above authorities, would be to permit the minor, by his own misrepresentation, to repeal the law passed for his advantage, open the door to repeated violations thereof, and would deprive the employer of the legal duty resting upon him, at his peril, to ascertain the age. So to hold would relieve the employer of the absolute and unconditional duty imposed upon him by the statute, and which under the decisions rests upon him. *Queen* v. *Dayton Coal & Iron Co.,* supra; *Inter. Agr. Corp.* v. *Cobble,* supra; *W. U. Tel. Co.* v. *Ausbrooks,* supra, 33 A. L. R., 330; *Manning* v. *American Clothing Co.,* supra. Also see *Iron & Wire Co.* v. *Green,* 108 Tenn., at page 164, 165, 65 S. W., 399.

In the case last cited Mr. Justice BEARD said: "The statute in question, like that involved in the Queen case,

was wisely adopted by the legislature with the view of keeping children out of employment where the services incident thereto were likely to be too heavy a task for their immature strength, or might be rendered in places and about machinery, which, because of their inexperience and thoughtlessness, would be constantly fraught with danger to them. The evident purpose was to prevent young children from entering upon these dangerous employments, and, to accomplish this, the act of employing them was made a misdemeanor, to be visited with a heavy fine. . . .

"If the theory of the plaintiff below was correct, then, after making all proper allowance for such contributory negligence as might be attributed to a youth of his tender years, the employer would unquestionably be liable for the injury sustained. We think the same result follows upon the theory propounder by the defendant company. It had no right to employ this minor. . . . Had he not been employed by this company, there is no reason to suppose he would have been on its premises, where the temptation occurred to him, to prank with these panels to his serious hurt. . . . The very employment is a violation of the statute and every injury that results therefrom is actionable." *Iron & Wire Co.* v. *Green,* supra.

This doctrine is reaffirmed in the case of *Finley* v. *Furniture Co.,* 119 Tenn., at pages 705 and 706, 109 S. W., 504.

This court also held the certificate from the parent or guardian must be kept on file in the office of the company, and, where this certificate as to age was not taken, such failure makes a case of the equivalence of negligence

on the part of the employer.  The court said: "If un-
certain as to the age of a boy offering for employment,
it is the duty of the employer to take the affidavit, in
order to his later excuse from liability because of acci-
dents."  *Fulton Co.* v. *Mass. Bonding & Ins. Co.,* 138
Tenn., 278, 284, 197 S. W., 866.

That case holds that, upon a finding that there was no
certificate procured by the employer, the employment
was illegal and established a case of negligence on the
part of the employer.  See, also, *Stetz* v. *Mayer, etc.,
Co.,* 163 Wis., 151, 155, 156 N. W., 971, Ann. Cas., 1918B,
675; *Norman* v. *Va. Pocahontas Coal Co.,* 68 W. Va., 405,
69 S. E., 857, 31 L. R. A. (N. S.), 504.

In the Fulton case, cited above, the court, speaking
through Mr. Justice WILLIAMS, said: "Our cases, cited
above, necessarily proceed upon that basis, since liability
on the part of the owner of a factory was fixed under
statutes conditional in nature—excusatory when a sworn
statement was procured."  Id., pages 284, 285, (197 S.
W., 867, 868).

In the Stetz case, supra, the supreme court of Wis-
consin, where a child and his father had represented that
he was more than sixteen years of age, under a statute
(St. 1915, section 1728a, subd. 1) forbidding employment
under sixteen years of age in a factory or workshop, in
reversing the lower court which dismissed the suit, and
holding the defendant liable for damages, did so because
"if the employment of plaintiff was in violation of the
statute prohibiting such employment, the fact that the
foreman had been misled did not alter the case and that
plaintiff's misrepresentation did not estop him from
claiming damages," the court holding that otherwise the

effect would be to seriously restrict and modify the beneficial object of the law. See 15 N. C. C. A., at page 730.

The Minnesota supreme court, in the case of *Dusha, Adm'x, etc.,* v. *Virginia, etc., Co.* (1920), 145 Minn., 171. 174 N. W., 482, 23 A. L. R., 632, held that an employer shall not be deemed to violate the statute if he has obtained and kept on file an affidavit of the parent of the child required by law (Gen. Stat. 1913, section 3848), and a misrepresentation by the boy and by his father and mother, when the child was less than sixteen years of age, was not a defense to such an action, and, further, that the defense of the child's contributory negligence or assumption of risk was not open to an employer, who violated that statute, of which the court said:

"It establishes the definite policy of the State upon one phase of child labor. The employer must not employ about dangerous machinery boys under sixteen. We hold in harmony with the holdings elsewhere that contributory negligence and assumption of risks are not defenses open to the employer."

The court then held that the misrepresentation of age, even by the father and mother, would not bar them as beneficiaries, but this latter holding is contrary to the holding of this court in the Cobble case.

Because of this illegality, it was also held that a misrepresentation of age by a minor unlawfully employed under such a statute was not a valid defense at common law to his suit for injuries, in the case of *Grand Rapid Trust Co.* v. *Petersen Beverage Co.* (1922), 219 Mich., 208, 189 N. W., 186. See, also, *Evans* v. *Dare Lumber Co.,* 174 N. C., 31, 93 S. E., 430, 30 A. L. R., 1498. There the court said: "It has been held that a violation of our

statute is negligence *per se* [citing cases]. And there is a presumption that the child is incapable of contributory negligence [citing cases]. . . ."

In 1920 the supreme court of Arkansas, upholding the constitutionality of its Child Labor Law (Laws 1915, p. 1505), held that misrepresentation by a minor of his age, inducing another to employ him, does not absolve the latter from liability for injuries; that the defenses of assumption of risk and contributory negligence are not available to one who employs a boy, prohibited by stat ute, which results in injury while in the illegal employment, it being the proximate cause of his injury, saying:

"There is great conflict in the authorities on these points, but we are inclined to the view that the defenses of assumption of risk and of contributory negligence are not available to the defendant." *Terry Dairy Co.* v. *Nalley* (1920), 146 Ark., 448, 225 S. W., 887, 12 A. L. R., 1208.

The court in the above case reviews the authorities extensively.

In the case of *Louisville, H. & St. L. R. Co.* v. *Lyons*, 155 Ky., 396, 159 S. W., 971, 48 L. R. A. (N. S.), 667, the court said: "But the imposition of a small penalty on the employer was not all the legislature intended to do in its efforts to save children from being crippled or killed in dangerous occupations, or the only burden it was intended the employer should assume if he violated the statute. To so construe it would be to lose sight of the rights of the child who should receive the fullest measure of compensation if injured while working in a forbidden employment. If the child is to assume the risk of danger that follows his thoughtlessness or want of

care, or is to be charged with negligence because his immature judgment and youthful habits caused the accident, then in many cases on the child and not the employer would be put the consequences of the unlawful act of the employer. The child, in accepting employment, does not knowingly violate any law or purposely do any wrong; but the employer does, and, between the two, the employer, for the benefit of the child, should bear all the burden and the child none. In other words, the employer should be required, so far as compensation can do it, to put the child in the same condition as he would have been except for the wrongful employment which caused his injury.''

And further quoting: ''It must ascertain at its peril that the boys that it employs are of the class that it may lawfully employ.''

The case of *Koester* v. *Rochester Candy Works* (1909), 194 N. Y., 92, 87 N. E., 77, 19 L. R. A. (N. S.), 783, 16 Ann. Cas., 589, seems to support the view of the defendant to some extent. However, the New York court holds that the principle of estoppel is not applicable to such a case, saying: ''The question always is whether the employer is justified in believing that the employee is of sufficient age to authorize his employment.''

This case seems to be authority for the suggestion in 18 R. C. L., 555, that the employer must exercise proper vigilance and caution in admitting a child in his employment. However, that work further states: ''For this purpose he may not rest alone on the representation of the child or its parents, but is required to exercise proper vigilance to discover the fact. What such vigilance dic-

tates differs in different cases." 18 R. C. L., section 67, p. 555, and cases cited.

So Labatt's Master and Servant (2d Ed.) 1903, p. 5931, vol. 5, lays the rule down, as follows: "It is generally held that the right of action arising from a violation of these statutes is not affected by misstatements as to the minor's age. This might be put upon the ground that infants are not liable for torts connected with or growing out of their contracts, and that the doctrine of estoppel *in pais* is not applicable to them. . . . The courts, however, have not been inclined to allow misstatement of age by a minor as a defense to his action [citing cases."]

The supreme court of the United States, in the case of *Sims* v. *Everhardt,* 102 U. S., 300, 26 L. Ed., 87, with reference to estoppel *in pais* as applicable to infants, said: "The question is, whether acts and declarations of an infant during infancy can estop him from asserting the invalidity of his deed after he has attained his majority. In regard to this there can be no doubt, founded either upon reason or authority. Without spending time to look at the reason, the authorities are all one way. An estoppel *in pais* is not applicable to infants, and a fraudulent representation of capacity cannot be an equivalent for actual capacity."

There is an exhaustive note on this question, and numerous authorities cited of both English and. United States courts, in 4 Ann. Cas., 535.

So we conclude from these authorities that no defense of fellow servant, nor of assumption of risk, nor of estoppel *in pais,* was available to the defendant under the

record in the instant case, and that the holding of the court of appeals to the contrary was error.

4. The court of appeals was of opinion that the circuit judge committed error in not submitting to the jury the issue raised by the defendant's request as follows: "It is admitted by the plaintiff, Paul Spitzer, that at the time he was employed he falsely represented to the manager of the Knoxville News that he was more than sixteen years of age, and that he did so for the purpose of procuring said employment.

"I charge you that, if you find further that the manager of the Knoxville News acted on these representations of the plaintiff at the time he was employed, and believed, or had no reason to dispute, that he, plaintiff Paul Spitzer, was telling the truth about his age, then, while his employment would be technically illegal, yet the jury may consider this false representation made by the plaintiff in mitigation of damages, and would be justified in materially reducing the damages which plaintiff would otherwise be entitled to recover, taking into consideration all the facts and circumstances of the case along with the age and intelligence of the plaintiff, and taking into consideration the motives which prompted him to make these false representations," —that court being of the opinion that if this charge had been given, the jury would have considered these fraudulent representations in mitigation of damages by reason of petitioner's deceit. It was argued before us, also, that the court should have permitted the jury under the petitioner's plea, and under this request, to pass upon the contributory negligence of the petitioner in mitigation of damages.

The only contributory negligence relied upon in this request was that the jury might consider the false representation in mitigation of damages. Under the foregoing authorities we hold that this request was properly denied. To have given it would likely have resulted in depriving the petitioner of the benefit of these laws, and in relieving the defendant of this liability. It was the only request made by the defendant. There was no further request on the subject of contributory negligence, and there was no contributory negligence in the case. The court charged the jury, however, as follows:

"And if you should find and believe from a preponderance of all the evidence that T. J. Busby carelessly and negligently threw said metal to the floor, that is, if he failed to exercise reasonable care in handling it, and his said failure to exercise such care was the proximate cause of plaintiff's injury, then it would be your duty to return a verdict for the plaintiff under the second count of plaintiff's declaration, and assess his damages as will be hereinafter charged you;"—and again with reference to the operation of the forbidden machine the court charged:

"I therefore charge you that it was unlawful for the defendant to permit the plaintiff, or suffer him, to assist in any way in the operation of said press, with or without a working certificate.

"If the preponderance of all the evidence shows that Paul Spitzer, at the time of his employment and when he was injured, was under sixteen years of age, and the defendant, Knoxville News Company, did not have on file the employment certificate, accessible to the shop and factory inspector, as required by law, then his em-

ployment was unlawful, and the defendant would be guilty of an act of negligence in allowing him to work in its said plant, and the fact that the plaintiff misrepresented his age at the time he sought employment would not alter the case. It is therefore your duty to find for the plaintiff under the last count of the declaration, and assess the damages as hereinafter given you in charge And the mere fact that plaintiff misrepresented his age to secure employment would not alter the case.''

The jury found for petitioner thereunder, and this charge was in accordance with the foregoing authorities. There was no special request for the court to charge upon the subject of contributory negligence, and the petitioner's misrepresentations as to his age being the only facts shown in this request, or the record, for that matter, which might have been considered in mitigation of damages, and having held against that, there was no error in declining this request, and was no error in the court's charge.

5. The last remaining question for our disposition is raised by the ninth assignment of error, which was that the court of civil appeals erred in reversing the lower court, because there was no evidence to support the verdict, and overruling the assignment of error of the petitioner as to the remittitur, upon the same ground. While, of course, we hold from what has been said before that there is abundant evidence to sustain the verdict in this case, it is necessary to dispose of the assignment that the petitioner accepted under protest the remittitur of $500 as required by the trial judge, and that this was error.

As to this we are content to abide the decision of the learned trial judge, who saw the witnesses, and was of

the opinion $1,500 was a sum·which met the ends of justice, and this assignment of error by the petitioner is accordingly overruled.

Therefore it results that we feel compelled to reverse this case, and the decree of the court of appeals must be reversed, and the judgment of the circuit court affirmed, with costs.

HALL, McKINNEY, and CHAMBLISS, JJ., concur.

COOK, J., does not concur.